Mr. Justice Clayton
delivered the opinion of the court.
This is in substance the same case which is reported in Freem. Ch. Rep. 299, under the name of Parish & Co. v. Joseph C. Lewis et al. The chancellor dismissed the bill in that case in March, 1843; but in June, 1844, this decree was set aside, and the cause reinstated. No farther notice was ever taken of this cause of Parish & Co.; but Lewis, in July, 1844, filed a cross-bill, in which he reiterated the charges contained in the bill of Parish & Co., and sought to relitigate the same matter. The defendants filed answers to this cross-bill, without pleading the former decree in bar, and without calling the jurisdiction into question. It is with reluctance that we give prominence to points, which have not been made in argument, yet when they are so conclusive as in this instance, and lie so directly in the way, it would be a dereliction of duty to overlook them.
The decree dismissing the bill was final and conclusive. The parties were out of court. Fifteen months afterwards an order was made upon motion, setting that decree aside. This *230 order cannot be regarded otherwise than as a nullity. After'the term bad elapsed at which the decree was pronounced, the power over the' decree was at an end. Sagory v. Bayless et al., decided at this term, [ante, 153.] With a final decree against the right of the complainant in the cross-bill still in force, it was not competent to have the same matter reinvestigated between the same parties. Were this latitude indulged, there could be no end to litigation, and no repose to society.- Confident as we áre in the correctness of this opinion, as the court below re-investigated the whole case, and made a second decree differing from the first, we will likewise consider the last.
The principal difficulty in the case is the ascertaining of the facts. The testimony is not very consistent, but we shall state it as strongly for the complainant as the most favorable view will warrant. There was, in 1837, a firm in Manchester of Cusack, Lewis <fc Dabbs, composed of Samuel B. Cusack, Joseph C. Lewis the complainant, and Joseph W.' Dabbs. They bought a stock of goods of James W. Cusack. Lewis subsequently sold out his interest to the other members of the firm, who then conducted business under the style of Cusack & Dabbs. In February, 1838, James W. Cusack bought out the interest of Cusack & Dabbs, in the goods, notes, accounts, &c., and he afterwards sold the stock of goods to E. C. Wilkinson for the sum of $16,000. Wilkinson gave three, notes for the amount,-but there is only one now in controversy for about the sum of $4500. The notes were drawn payable to Cusack & Dabbs, and by them indorsed to J. W. Cusack, who deposited this one in the Commercial Bank of Manchester, as collateral security for debts due the bank by Cusack, Lewis & Dabbs, and by 'Cusack & Dabbs. The note was afterwards settled with the bank by Wilkinson, and a credit indorsed for the amount upon a bond or note of Cusack & Dabbs to the bank. This bill is filed, asserting that, by agreement by Cusack, Lewis & Dabbs, with the knowledge of James W. Cusack, the notes of Wilkinson were to be applied first to the payment of the debts of Cusack, Lewis & Dabbs, and that the appropriation to the debts of Cusack & Dabbs was *231 a misapplication of the fund; that complainant had paid the debts of Cusack, Lewis & Dabbs; that Cusack was dead and insolvent, and Dabbs was a certificated bankrupt; that he had a right to stand in the place of the creditors, and to have a decree for the amount of the note against the bank. It is also alleged that the sale by Cusack & Dabbs to J. W. Cusack, in February, 1838, was fraudulent as against creditors, and for that reason also, J. W. Cusack had no right to transfer the note in question. On the other hand, it is insisted that the transfer was legal, that there was no misapplication, and that the bank, as a dona fide holder for value and without notice, has the right to retain what it received.
Upon this state of facts, the legal title to the note was vested in James W. Cusack by the indorsement of Cusack & Dabbs, even though it were made by S. B. Cusack without the knowledge of Dabbs. It was made to pay the firm debt of Cusack & Dabbs, and as between them was a lawful application of the -partnership funds, by one of the partners.
If it be true as charged, that Cusack & Dabbs agreed with complainant, that the Wilkinson notes should go to pay the debts of Cusack, Lewis & Dabbs, what right was thereby conferred upon him ? A mere equity to have this agreement performed. That is its utmost extent. Such equity can only be enforced against- those who can be affected with notice of it. If J. W. Cusack had such notice as would charge him with the equity, there is no pretence that the bank had notice, until it had received payment, given up the note to Wilkinson, and indorsed the credit upon the bond or note of Cusack & Dabbs. Our statute, giving to the defendant the right to set up in defence against the indorsee all matters which he could set up against the payee, does not embrace this case. The complainant is not a party to the paper either as maker, payee, or otherwise. The case must stand, then, upon the general principles of equity. The holder of the legal title to such paper, by transfer for valuable consideration without notice, is to be preferred to one who has only a prior equity. On the authority of the case of Swift v. Tyson, 16 Pet. 1, and of Fellows, Johnson & Co. v. Harris, *232 12 S. & M. 465, we do not hesitate to say, that this paper was received by the bank in the usual course of trade for value.
It is proper to look at the case in another aspect. The goods had been purchased by James W. Cusack of Cusack & Dabbs, and were by him sold to Wilkinson. The note was made payable, as he says, to Cusack & Dabbs at his request, that he might have their indorsement upon it, and apply it to the payment of their debts for which he was bound. It is alleged that the sale of the goods to James W. Cusack was fraudulent. If this were so, Cusack & Dabbs, as the parties to the fraud, could not be relieved against it, and by the agreement with them in regard to the Wilkinson notes, which Lewis sets up, he can only stand in .their place. He is not asserting a right as a creditor of Cusack •& Dabbs against James W. Cusack paramount to his, but is claiming to hold under them a benefit growing out of the fraudulent transaction. He is willing to stand by the sale up to a certain point and claim a benefit derived from it, and then reject it and claim against it. This cannot be done. He must either seek to set aside the sale entirely, or ratify it entirely. In either event, he could not succeed in this case, as it now stands. If the sale were set aside, Wilkinson would not be bound by the notes ; if ratified, then the legal title was in James W. Cusack, and his transfer to the bank under the circumstances gave priority to it. Dabbs had no title to the note after the indorsement,’ the purchase of his interest at the bankrupt sale, therefore, conferred no right.
In conclusion, we are not prepared to say that the circumstances set forth in the bill conferred upon Lewis any equity, as against James W. Cusack'. But that point was not argued, and we only advert to it, to show that the case is not to be regarded as having recognized or given sanction to such equity.
The decree of the chancellor is reversed, and the cross-bill dismissed. ' This disposes as well of the appeal by the bank as of the cross-appeal by Lewis. The costs in this court and in the court below to be paid by Lewis.